**In re Tsutomu HARUNA and Sado Kita (Serial No. 29/058,031).**

No. 00–1283.

United States Court of Appeals, Federal Circuit.

DECIDED: April 18, 2001.

Andrew J. Patch, Young & Thompson, of Arlington, VA, argued for appellants.

Joseph G. Piccolo, Associate Solicitor, Office of the Solicitor, of Arlington, VA, argued for appellee, Director of the United States Patent and Trademark Office. With him on the brief were John M. Whealan, Solicitor; and Sydney O. Johnson, Jr., Associate Solicitor.

Before SCHALL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

SCHALL, Circuit Judge.

Tsutomu Haruna and Sado Kita (collectively, "Haruna") appeal the decision of the United States Board of Patent Appeals and Interferences ("Board") that upheld the examiner's rejection of the sole claim in design patent application serial number 29/058,031 (the " '031 application"). *In re Haruna*, No.1999–2020 (Bd. Pat.App. & Int. Dec. 20, 1999). The Board affirmed the examiner's rejection of the claim as being unpatentable under 35 U.S.C. § 103 because it is rendered obvious by U.S. Patent No. 4,747,093 to Benne et al. ("Benne"). Because Benne teaches away from the design claimed in the '031 application, we reverse the decision of the Board.

## BACKGROUND

The sole claim of the '031 application is directed to an "ornamental design for a pre-recorded optical disk." The design differs from conventional pre-recorded optical disks in that the metallized region of the disk stops well short of the outer rim, and the disk has a relatively wide transparent region adjacent the outer rim.

The pen and ink and photographic versions of Figure 1 of the application are set forth below:

FIG. 1

FIG. 1

As seen in the photographic figure, the outer ring of the disk is transparent, while the adjacent inner ring is metallized and may bear printing.

During prosecution, the examiner rejected the '031 application as being obvious under § 103 in view of Benne. Benne is a utility patent directed to disk-shaped information carriers, such as video laser discs and digital audio discs. Benne, column 1, lines 9–11. Benne describes its disks as having at least three zones: (1) outer zone A; (2) center zone B; and (3) inner zone C. *Id.* at column 5, lines 8–12. Center zone B is metallized and contains the information recorded on the disk. *Id.* at column 5, lines 14–21. Outer zone A does not contain recorded information and may or may not be metallized. *Id.* at column 3, lines 56–57; column 5, lines 49–50. According to the patent, this zone can be relatively large. *Id.* at column 2, line 26. Figure 1 of Benne illustrates the basic configuration of the Benne disks:

FIG.1

Zones A/B and B/C separate zones A, B, and C. *Id.* at column 5, lines 10–11. Reference letter M is not identified in the patent, but appears to identify the center hole of the disk. *See, e.g., id.* at column 5, line 13.

The object of the Benne invention is to manufacture disks in such a way as to conceal any cosmetic defects in outer zone A. *Id.* at column 2, lines 23–27. The invention achieves this goal "by treating a surface of the outer zone . . . so that . . . the [disk] reflects any light falling in the outer zone at least partially diffusely and/or absorbs it at least partly, so that optical effects . . . which could adversely influence the appearance of the [disk] are at least partially masked or concealed." *Id.* at column 2, lines 39–49. The patent teaches that "[c]oncealment of the defects may be achieved by providing the outer zone . . . on its readout and/or back sides with a matt [sic] finish, printing, and/or one or more stick-on labels." *Id.* at column 3,

lines 31–34. According to the patent, when outer zone A is not metallized, "the matt [sic] finish is then also visible from the readout side and can . . . be used . . . as a background for printing applied to the outer zone on the readout side." *Id.* at column 3, lines 61–68. When the disk is fully metallized, "both the back and the readout side may be given a matt [sic] finish, be partially printed or provided with at least one stick-on label in the outer zone." *Id.* at column 4, lines 1–4. The patent also teaches the use of combinations of the disclosed concealing measures. *Id.* at column 4, lines 4–5. The teachings at column 8 of Benne provide further examples of decoration using "matt-printed [sic] parts, reflecting parts, and printed parts of any required color" in accordance with the invention. *Id.* at column 8, lines 54–68. Figure 2 of Benne illustrates "different possible combinations of the concealment measures." *Id.* at column 5, lines 41–42. In this figure, the outer zone is labeled as A1–A4, the inner zone is labeled as B1–B4, and the center zone is not labeled:

## FIG. 2

In rejecting the '031 application over Benne, the examiner asserted that the characteristics of the claimed design were basically the same as those of the Benne disks. The examiner determined that the difference between the disk claimed in the application and the disks disclosed in Benne—the transparency of the wide outer region—did not lend patentability to the design. The examiner stated that the clarity and openness of the claimed design was obvious and expected from the conventional transparent material used as the substrate for the disk, and that the claimed design required no exercise of inventive faculty in either conception or execution. The examiner asserted that the teachings in Benne regarding an embodiment wherein outer zone A is not metallized, *id.* at column 3, lines 61–63, and an embodiment where color printing on one side of the outer zone can be seen from the other side, *id.* at column 5, lines 61–62, suggest a disk with a transparent outer region.

Haruna appealed the rejection of the '031 application to the Board. The Board sustained the obviousness rejection, citing the appearance of conventional disks and the teachings of Benne. The Board noted that conventional disks have "a relatively narrow, approximately three millimeter, extreme outer ... region ... [that is] unmetallized and transparent." *Haruna,* slip op. at 3. The Board determined that the only difference between the claimed design and the design of the disks disclosed in Benne is that the claimed design has a transparent outer region, whereas Benne teaches that the outer zone of its disks has "a matte finish or some other light-diffusing or light-absorbing imprint." *Haruna,* slip op. at 5. The Board noted that Benne teaches that the printed material of its disks may be of "any required color," *id.* (citing Benne, column 8, lines 54–68), and cited *In re Cohn,* 80 F.2d 65, 27 USPQ 413 (CCPA 1935), for the proposition that transparency is legally considered to be a color. *Haruna,* slip op. at 6.

The design at issue in *Cohn* was a cellulosic ribbon with a transparent center portion and edges that were a different color than the center portion. *Cohn,* 80 F.2d at 66, 27 USPQ at 413. The prior art was a design for a shoe strap consisting of "a strap with black marginal stripes and an intervening light stripe." *Id.,* 27 USPQ at 413. The court determined that "[a]lternating stripes of color, arranged as they are [in the claimed design], are sufficiently shown by the references." *Id.* The court stated that "[t]he fact that the design here

**1334**

presented shows a transparent portion rather than a stripe of different color ... creates no patentable novelty in the design." *Id. Cohn* also sets forth the proposition that "[i]t cannot be successfully argued that patentability of a design may rest on color alone." *Id.* at 65, 27 USPQ at 413.

The Board noted that *In re Iknayan,* 47 C.C.P.A. 789, 274 F.2d 943, 124 USPQ 507 (1960), applied the principles set forth in *Cohn.* The design at issue in *Iknayan* was a tire with a sidewall having a portion that was white adjacent a portion that was chromatic. *Id.* at 943, 47 C.C.P.A. 789, 274 F.2d 943, 124 USPQ at 508. The prior art included tires having sidewalls with white portions adjacent colored portions. *Id.* at 943–44, 47 C.C.P.A. 789, 274 F.2d 943, 124 USPQ at 508. The court determined that "[t]he general appearance of appellants' tire is quite similar to that of [the prior art,]" and that "[s]election of a chromatic color to replace the dark color shown in the [prior art] would not produce any basic alteration or unexpected appearance." *Id.* at 944, 124 USPQ at 509.

The Board concluded from *Cohn* and *Iknayan* that the fact that the outer region of Haruna's disk is transparent where the outer region of Benne's disks are colored does not amount to a patentable difference. *Haruna,* slip op. at 6. Haruna appeals the Board decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Obviousness under § 103 is a question of law based on underlying findings of fact. *In re Gartside,* 203 F.3d 1305, 1316, 53 USPQ2d 1769, 1776 (Fed. Cir.2000). We review the Board's factual findings for substantial evidence, and its legal conclusion of obviousness without deference. *Id.* at 1315, 203 F.3d 1305, 53 USPQ2d at 1775–76.

Haruna argues that the decision of the Board should be reversed because Benne does not disclose or suggest a disk that looks like the claimed design. Haruna argues that the claimed design is antithetical to the teachings of Benne because Benne is directed to concealing defects in the outer region by covering up the outer region with a matte finish, printing, or labels, whereas the claimed design includes a transparent outer region in which any defects would not be concealed. Haruna argues that the patentability of the claimed design lies in the combination of the shape of the claimed article and its surface ornamentation. Haruna acknowledges that the shape of the claimed disk is not new, but asserts that the design as a whole is patentable.

Haruna argues that the Board's reliance on *Cohn* is misplaced because that case relied at least in part on the color depletion theory of trademark jurisprudence, which was abrogated by the Supreme Court's decision in *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995).[1] Ha-

1. The color depletion theory was based on the fact "that there are a limited ascertaining whether the applicable prior art and that it is not wise policy to foster further limitation by permitting trademark registrants to deplete the reservoir." *In re Owens–Corning Fiberglas Corp.,* 774 F.2d 1116, 1120, 227 USPQ 417, 419 (Fed.Cir.1985). In *Qualitex,* the Supreme Court noted that "[w]hen a color serves as a mark, normally alternative colors will likely be available for similar use by others," and stated that "if that is not so—if a

'color depletion' ... problem does arise—the trademark doctrine of 'functionality' normally would seem available to prevent the anticompetitive consequences." *Qualitex,* 514 U.S. at 168–69, 115 S.Ct. 1300. The doctrine of functionality "forbids the use of a product's feature as a trademark where doing so will put a competitor at a significant disadvantage because the feature is 'essential to the use or purpose of the article' or 'affects [its] cost or quality.' " *Id.* (alteration in original) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S.

runa also attempts to distinguish *Cohn* by limiting it to its facts.

The Solicitor for the Patent Office argues that Haruna's design is obvious because Benne teaches that the substrate of its disks is initially transparent and because conventional disks have an outer rim that is transparent. The Solicitor argues that maintaining the transparency of the Benne disks or increasing the width of the transparent region of conventional disks would have been obvious to the skilled disk designer. The Solicitor argues that the Board's determination that Benne provides motivation to widen the narrow transparent region of conventional disks is supported by substantial evidence, citing the teaching in Benne that the substrates of its disks are transparent in their initial states. *See* Benne, column 1, lines 15–16.

The Solicitor argues that this case is factually similar to *Cohn* because the design at issue in that case was transparent where the prior art was colored. The Solicitor argues that *Cohn* remains good law because it does not specifically rely on the trademark color depletion theory. Moreover, the Solicitor argues, the novelty and nonobviousness requirements of patent law are more stringent than the distinctiveness requirements of trademark law. The Solicitor argues that the facts of *Iknayan* also are similar to the present case because the design in that case was chromatic where the prior art was a dark color. The Solicitor argues that both *Cohn* and *Iknayan* support the Board decision on appeal because they both hold that changing the color of a region of a design does not make the new design patentable.

 The patentability of a claimed design turns on whether its overall appearance and visual effect are novel and nonobvious. *In re Rosen*, 673 F.2d 388, 390, 213 USPQ 347, 349 (1982). Section 103

844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d

applies to design patents in much the same manner as it applies to utility patents. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1441, 221 USPQ 97, 108 (Fed. Cir.1984) ("35 U.S.C. § 103 (and all the case law interpreting that statute) applies with equal force to a determination of the obviousness of either a design or a utility patent."); *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103, 40 USPQ2d 1788, 1790 (Fed.Cir.1996) ("In the design patent context, the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."). The obviousness of a design "is determined by ascertaining whether the applicable prior art contains any suggestion or motivation for making the modifications in the design of the prior art article in order to produce the claimed design." *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1462, 43 USPQ2d 1887, 1891 (Fed.Cir.1997). "A prima facie case of obviousness can be rebutted if the applicant ... can show 'that the art in any material respect taught away' from the claimed invention." *In re Geisler*, 116 F.3d 1465, 1469, 43 USPQ2d 1362, 1365 (Fed.Cir.1997) (quoting *In re Malagari*, 499 F.2d 1297, 1303, 182 USPQ 549, 553 (CCPA 1974)). "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, ... would be led in a direction divergent from the path that was taken by the applicant." *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360, 52 USPQ2d 1294, 1298 (Fed.Cir.1999).

The Board determined that the teachings of Benne combined with the general knowledge that conventional disks have a narrow transparent region at their rims renders the claimed design obvious. However, this determination ignores the teach-

606 (1982)).

ings in Benne that discourage a disk with the claimed design. As discussed above, the object of Benne is to conceal manufacturing defects in the outer zone of disks. Benne, column 2, lines 23–26. Benne achieves this object by treating the surface of the outer zone to provide a matte finish, or a colored surface, or a pattern, or a combination thereof. *Id.* at column 2, lines 40–49; column 8, lines 54–63. Broadening the transparent region of conventional disks would defeat the purpose of Benne, because providing a transparent region would not conceal any defects, and would result in a large region in which any defects would be readily apparent. Thus, Benne teaches away from the claimed design.

Benne's teaching that the outer zone of its disks may not be metallized does not suggest the claimed invention. According to Benne, even if the outer zone is not metallized, it will be provided with some sort of finish that diffuses or absorbs light. *Id.* at column 2, lines 40–49. Moreover, the fact that Benne teaches that the substrate for its disks is transparent in its initial state does not render the claimed design obvious. The invention is not directed to a substrate for a disk, but to the final product, a pre-recorded optical disk. Because Benne teaches away from a final product having a broad transparent outer region, it does not render the claimed design obvious.

■ *Cohn* and *Iknayan* do not require the result reached by the Board. As a preliminary matter, we note that this court has determined that color may play a role in the patentability of a claimed design. *See, e.g., Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1565, 7 USPQ2d 1548, 1554 (Fed.Cir.1988) (citing, while discussing infringement, the district court's discussion of the "separate coloration" of the pivot point of the claimed design for a shoe); *Litton,* 728 F.2d at

1443, 221 USPQ at 109 (upholding the validity of a design patent for a microwave oven where one feature of the claimed design cited by the district court was an oven door that had a "three stripe border with a central color different from the inner and outer stripes"). More importantly, although the differences between the claimed and prior art designs in *Cohn* are similar to the difference between the claimed design and that of Benne, the prior art references considered in *Cohn* and *Iknayan* did not teach away from the claimed design. The decisions in those cases therefore did not address a situation where the prior art taught away from replacing a colored region with a transparent region. Moreover, although the Court of Customs and Patent Appeals equated transparency with color in *Cohn,* the transparent region of the claimed design here differs more than by color from the outer zone of Benne. Specifically, the transparent region of the claimed design does not achieve the function of Benne of concealing defects in the disks. The difference between the design claimed in the '031 application and the design of the disks disclosed in Benne is one of more than "color alone" because of the unique difference in effect between a disk with a transparent outer region and a disk with an outer region of any other "color."

In both *Cohn* and *Iknayan,* the court determined that the designs on appeal did not have different overall appearances and visual effects than the designs of the prior art. *Cohn,* 80 F.2d at 67, 27 USPQ at 413 (determining that the difference between the transparent stripe of the claimed design and the light-colored stripe of the prior art was "indistinguishable in principle"); *Iknayan,* 274 F.2d at 944, 124 USPQ at 509 (stating that "[t]he general appearance of appellants' tire is quite similar to that of [the prior art]"). Here, however, the Board did not make such a finding. The Board's failure to apply the

ultimate test for obviousness—whether the overall appearance and visual effect of the claimed design is obvious in view of the prior art—is fatal to its analysis. The Board therefore erred as a matter of law.

## CONCLUSION

For the foregoing reasons, the decision of the Board is

REVERSED.

## COSTS

Each party shall bear its own costs.