# United States Court of Appeals
# for the Federal Circuit

_____

**CAMPBELL SOUP COMPANY, CAMPBELL SALES COMPANY, TRINITY MANUFACTURING, LLC,**
*Appellants*

**v.**

**GAMON PLUS, INC.,**
*Appellee*

_____

2020-2344, 2021-1019

_____

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-00091, IPR2017-00094.

_____

Decided:  August 19, 2021

_____

TRACY ZURZOLO QUINN, Holland & Knight LLP, Philadelphia, PA, argued for all appellants.  Appellants Campbell Soup Company, Campbell Sales Company also represented by STEVEN E. JEDLINSKI, Chicago, IL.

MARTIN B. PAVANE, The Davis Firm, Longview, TX, for appellant Trinity Manufacturing, LLC.

ANDREW L. TIAJOLOFF, Tiajoloff & Kelly LLP, New York, NY, argued for appellee.

_____

Before MOORE, *Chief Judge*, PROST and STOLL, *Circuit Judges.*

MOORE, *Chief Judge.*

Campbell Soup Company, Campbell Sales Company, and Trinity Manufacturing, LLC (collectively, Appellants) appeal two final written decisions of the Patent Trial and Appeal Board holding that Appellants did not demonstrate the claimed designs of U.S. Design Patent Nos. D612,646 and D621,645 would have been obvious over U.S. Design Patent No. D405,622 (Linz) or U.S. Patent No. 4,909,578 (Abbate). Because the claimed designs would have been obvious over Linz, we reverse.

## BACKGROUND

### A.  The Claimed Designs

Gamon Plus, Inc., owns the '646 and '645 patents, which each claim "[t]he ornamental design for a gravity feed dispenser display, as shown and described." J.A. 155; J.A. 158. The sole figure of the '646 patent depicts the following:



Many features in the above figure are drawn using broken lines, which, consistent with 37 C.F.R. § 1.152, means they "represent the article in which the claimed design is embodied, but . . . form[ ] no part of the claimed design." '646 patent at Description. Omitting those features from the above figure reveals that the '646 patent's claimed design is limited to what the parties refer to as the label area, cylindrical object, and stops:





J.A. 1113 (annotations added).

The '645 patent's sole figure is nearly identical to the '646 patent's figure, differing in only two respects. First, the top and bottom edges of the cylindrical object and the stops are shown in broken lines, which, again, means they "form[ ] no part of the claimed design." '645 patent at Description. Second, there is a small circle, also shown in broken lines, near the middle of the label area. *Id*. at Figure. Omitting these features from the '645 patent's figure yields the following:



J.A. 357 (annotations added).

## B.  The Prior Art

Linz discloses and claims a "display rack," as shown in Figure 1 thereof:



### C.   Gamon's Commercial Embodiment

Gamon's commercial embodiment of the claimed designs, called the iQ Maximizer gravity feed dispenser, is shown here:



J.A. 33.

From 2002 to 2009, Gamon sold about $31 million worth of iQ Maximizers to Campbell.  J.A. 14.  Campbell installed the iQ Maximizers in about 17,000 stores nationwide.  *Id.*  In its 10-K reports to the Securities and Exchange Commission, Campbell attributed increased soup sales in part to the iQ Maximizer.  *See, e.g.*, J.A. 1892 ("Condensed soup also benefited from the additional installation of gravity-feed shelving systems and increased advertising.").  In an interview for an industry publication, Campbell's marketing manager for retail development, Jacques Finnel, praised the iQ Maximizer as "more efficient than existing shelving formats."  J.A. 1881.  Mr. Finnel called out the dispenser's label area for "making it easier for consumers to locate specific flavors."  *Id.*  And an

internal Campbell marketing study touted the iQ Maximizer, calling it a "[b]reakthrough" and highlighting the "[b]illboard effect" of its label area.  J.A. 2268.

In late 2008, Campbell began purchasing gravity feed dispensers from Trinity.  J.A. 16.  Trinity's dispensers were similar to Gamon's iQ Maximizer:



J.A. 35.

## D.   Procedural History

In 2015, Gamon sued Appellants for patent infringement in the United States District Court for the Northern District of Illinois.  *Gamon Plus, Inc. v. Campbell Soup Co.*, No. 15-cv-8940 (N.D. Ill. filed Oct. 8, 2015).  Appellants petitioned for *inter partes* review of the '646 and '645 patents on multiple grounds, including that the claimed designs would have been obvious over (1) Linz in view of other references and (2) Abbate in view of Linz or another reference. The Board instituted *inter partes* review on the Linz ground but not on the Abbate ground.  *Campbell Soup Co.*

*v. Gamon Plus, Inc.*, IPR2017-00091, 2017 WL 1216049, at *12 (P.T.A.B. Mar. 30, 2017); *Campbell Soup Co. v. Gamon Plus, Inc.*, No. IPR2017-00094, 2017 WL 1216030, at *14 (P.T.A.B. Mar. 30, 2017). In its final written decisions, the Board held that Appellants had failed to prove unpatentability, finding that Linz is not similar enough to the claimed designs to constitute a proper primary reference.

Appellants appealed. We vacated and remanded, reasoning that the "ever-so-slight differences" the Board identified between Linz and the claimed designs did not support its finding that Linz is not a proper primary reference. *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1340–41 (Fed. Cir. 2019) (*Campbell I*). In addition, we instructed the Board to consider the non-instituted grounds consistent with the Supreme Court's decision in *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018).

On remand, the Board again held that Appellants failed to prove unpatentability. It found that Abbate is not a proper primary reference, and it held that the claimed designs would not have been obvious over Linz alone or in combination with other references. The Board reasoned that although Linz alone has the same overall visual appearance as the claimed designs, it is outweighed by objective indicia of nonobviousness, namely: (1) Gamon's commercial success in selling iQ Maximizers to Campbell; (2) Campbell's praise of, and commercial success in using, the iQ Maximizer; and (3) Trinity's copying of the iQ Maximizer. The Board presumed a nexus between those objective indicia and the claimed designs because it found that the iQ Maximizer is coextensive with the claims. The Board also found that Gamon established such a nexus regardless of the presumption.

Appellants again appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

We review the Board's legal determinations de novo and its factual findings for substantial evidence. *In re Van Os*, 844 F.3d 1359, 1360 (Fed. Cir. 2017). Obviousness is a question of law based on underlying facts. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017). The obviousness inquiry requires consideration of the four *Graham* factors: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness, such as commercial success, long felt but unsolved needs, and failure of others. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

A.   Linz Creates the Same Overall Visual Appearance

In the design patent context, we address the first three *Graham* factors by determining whether a designer of ordinary skill would have combined teachings of the prior art to create "the same overall visual appearance as the claimed design." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). This inquiry proceeds in two steps. First, before the trier of fact can combine prior art references, it must determine whether there exists a "primary reference," i.e., a single reference that creates "basically the same visual impression" as the claimed design. *Id.* "To be 'basically the same,' the designs at issue cannot have 'substantial differences in the[ir] overall visual appearance[s]'" or require "major modifications"; any differences must instead be slight. *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) (alterations in original) (first quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1330 (Fed. Cir. 2012); and then quoting *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993)). This is a question of fact. *Id.* Second, if a primary reference exists, the trier of fact must determine whether, using secondary references, an ordinary designer would have

modified the primary reference to create a design that has the same overall visual appearance as the claimed design. *Durling*, 101 F.3d at 103. This, too, is a question of fact. *See MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1334–35 (Fed. Cir. 2014).

Here, the Board found Linz alone creates "the same overall visual appearance as the claimed design[s]." J.A. 63; J.A. 140. Substantial evidence supports that finding. The following side-by-side comparison of the '646 patent's claimed design (left) and the corresponding portions of Linz's Figure 1 (right) shows the two are virtually indistinguishable:



J.A. 1113; J.A. 1686.

As the Board found, the Linz design has a label area with a symmetric, convex arcuate shape and a central apex that extends forward. J.A. 19; J.A. 96. It also has a bottom receiving area for receiving and displaying a can below the label area. J.A. 20; J.A. 97. Gamon contends that Linz can only accommodate a can with a smaller diameter than the can depicted in the claimed designs. Appellee's Br. at 44–46. Gamon further appears to argue that Linz's can would

come to rest farther rearward than in the claimed designs. *See id.* at 46–48. Those slight differences, however, do not substantially detract from the similarity in overall visual appearances. Indeed, the Board acknowledged those differences and still found that Linz and the claimed designs share the same overall visual appearance. J.A. 61–62; J.A. 138–39. Gamon does not challenge that finding. We therefore discern no reason to disturb the Board's finding that Linz satisfies the *Durling* test.

B. The Evidence of Commercial Success and Praise Lacks a Nexus to the Claims

Evidence of objective indicia of nonobviousness must have a nexus to the claims, i.e., "there must be a legally and factually sufficient connection between the evidence and the patented invention." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (internal quotation marks omitted). Here, the Board found both a presumption of nexus and a nexus-in-fact between the claimed designs and the evidence of commercial success and praise. Substantial evidence does not support either finding.

1. The Presumption of Nexus Does Not Apply

We presume a nexus if the objective indicia evidence is tied to a specific product that is "coextensive" with the claimed invention, meaning that the product "*is* the invention disclosed and claimed." *Id.* (emphasis in original) (quoting *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988)). A product is "essentially the claimed invention" when, for example, "the unclaimed features amount to nothing more than additional insignificant features." *Id.* at 1374. Whether a product is coextensive with a claimed invention is a question of fact. *Id.* at 1373.

Despite recognizing that "the claimed portions of the display rack do not cover the entire display rack," J.A. 41, the Board found that Gamon's iQ Maximizer is coextensive

with the claimed designs.  The Board reasoned that "[t]he unclaimed rearward rails and side portions are not prominent ornamental features," and those portions are, therefore, "insignificant to the ornamental design."  J.A. 42–43 (internal quotation marks omitted).  This circular reasoning reflects a misunderstanding of the law.  In determining coextensiveness, the question is not whether unclaimed features are insignificant *to a product's ornamental design.* The question is instead whether unclaimed features are "insignificant," period.  *See Fox Factory*, 944 F.3d at 1374. That is because the purpose of the coextensiveness requirement is to ensure that nexus is presumed only when the product "*is* the invention disclosed and claimed."  *Id.* (emphasis in original).  By limiting its analysis to ornamental significance, the Board simply did not answer the relevant question: whether the iQ Maximizer "*is* the invention."

The Board attempted to distinguish *Fox Factory* because it involved a utility patent, rather than a design patent.  J.A. 41.  But the coextensiveness requirement does not depend on the type of patent at issue.  The Board offered no rationale for taking a different approach in design patent cases, and we do not discern any.  Accordingly, we reject the proposition that a product satisfies the coextensiveness requirement in the design patent context merely if its unclaimed features are *ornamentally* insignificant.

Under the correct legal standard, substantial evidence does not support the Board's finding of coextensiveness.  At most, the claims cover only a small portion of the iQ Maximizer: its label area, cylindrical object, and stops.  The Board thus correctly recognized that the claims do not cover, for example, the dispenser's "rearward rails and side portions."  J.A. 42.  Gamon does not contest Appellants' assertion that those and other structures are significant because they facilitate the loading and dispensing of products.  *See* Appellants' Br. at 44–45.  Because the iQ Maximizer undisputedly includes significant unclaimed functional elements, no reasonable trier of fact could find

that the iQ Maximizer is coextensive with the claimed designs.[1]

### 2. Gamon Did Not Establish Nexus-in-Fact

A patentee may establish nexus absent the presumption by showing that the objective indicia are the "direct result of the unique characteristics of the claimed invention," *Fox Factory*, 944 F.3d at 1373–74 (quoting *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996)), rather than a feature that was "known in the prior art," *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). Whether a patentee has established nexus is a question of fact. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1331–32 (Fed. Cir. 2016).

Here, the Board based its nexus finding on evidence that, at best, shows the commercial success and praise of the iQ Maximizer resulted from its incorporation of the claimed label area. *See* J.A. 45–50. For example, with respect to commercial success, the Board cited the internal marketing study in which Campbell (1) credited the label area's "[b]illboard effect" for improving branding of Campbell's products and (2) recounted consumers' feedback about the label area (e.g., "The label makes a difference, it's like looking at your soup before you eat it."). J.A. 2268. As for praise, the Board cited the industry publication in which Campbell's marketing manager for retail development extolled the label area for "making it easier for consumers to locate specific flavors." J.A. 1881.

But, as the Board found, a display rack with a label area was not new. J.A. 19. The only features the Board

---

[1]    We do not go so far as to hold that the presumption of nexus can never apply in design patent cases. It is, however, hard to envision a commercial product that lacks any significant functional features such that it could be coextensive with a design patent claim.

found that distinguished the claimed designs from the prior art Linz design were: (1) a larger cylindrical object, (2) a resting point of the cylindrical object that is partially forward of the label area, (3) a taller label area that mimics the proportions of the cylindrical object; and (4) spacing equal to one label length between the label and the cylindrical object.  J.A. 61–62; J.A. 65.



J.A. 1113; J.A. 1686 (annotations added).  Thus, to establish nexus, Gamon needed to present evidence that the commercial success and praise of the iQ Maximizer derived from those "unique characteristics." *Fox Factory*, 944 F.3d at 1373–74.  It failed to do so.  Instead, it presented evidence that merely ties commercial success and praise to aspects of the label area that were already present in the prior art.  The cited industry publication, for example, highlights only that the label area displays "soup labels printed at twice their normal size."  J.A. 1881.  Likewise, the internal Campbell marketing study just notes that the label area is "210% larger" than the product label.  J.A. 2268.  This is also true of the prior art Linz design.  Moreover, the claimed designs do not require any specific size of the label area, or spacing between the can and the

label area, because the patents' figures depict the label area boundaries using broken lines. '646 patent at Figure; '645 patent at Figure.

Gamon relies on the testimony of the named inventor, Terry Johnson, who asserted that the iQ Maximizer's commercial success was due specifically to its label area having "the same proportions as the can." J.A. 1815:3–17. But there is no evidence in the record supporting that self-serving assertion. And again, the size of the label area is not claimed. Accordingly, given the absence of evidence tying any commercial success or praise to the claimed unique characteristics of the iQ Maximizer, substantial evidence does not support a nexus between those objective indicia and the claims.

We reject the Board's view that, in design patent cases, objective indicia need not be linked to the claimed design's unique characteristics. J.A. 58 ("[W]e do not believe that to establish commercial success for a design patent, a patent owner should have to differentiate design features 'that were already known' from those that are purportedly novel."). The Board reasoned that "the invalidity analysis [in design patent cases] focuses on the ornamental design as a whole." *Id.* But the same holds true in utility patent cases, *WBIP*, 829 F.3d at 1331–32 ("[T]he obviousness analysis involves determining whether *'the claimed invention as a whole* would have been obvious.'" (quoting 35 U.S.C. § 103)), and yet we still require a link to the claimed invention's unique characteristics in that context. We therefore hold that, as in the utility patent context, objective indicia must be linked to a design patent claim's unique characteristics.

C.  The Evidence of Copying Does Not Overcome Linz

For purposes of this appeal, we assume substantial evidence supports the Board's finding that Trinity copied the unique characteristics of the claimed designs. Even accepting the evidence of copying, we conclude that this alone

does not overcome the strong evidence of obviousness that Linz provides.

## CONCLUSION

Weighing all of the *Graham* factors, including (1) the Board's finding that, from the perspective of a designer of ordinary skill, Linz creates the same overall visual impression as the claimed designs and (2) copying by Trinity of the claimed designs' unique characteristics, we conclude that the claimed designs would have been obvious over Linz. Accordingly, we reverse the Board's decisions holding that Appellants failed to prove unpatentability based on Linz. We have considered Gamon's arguments and find them to be without merit. Because we reverse the Board's decisions as to Linz, we need not reach Appellants' alternative arguments.

**REVERSED**