**In re Leon ROSEN.**

**Appeal No. 81–602.**

United States Court of Customs and Patent Appeals.

March 11, 1982.

Michael J. Sweedler, New York City, for appellant.

Joseph F. Nakamura, Sol., and John F. Pitrelli, Asst. Sol., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the rejection under 35 U.S.C. § 103 of appellant's [1] de-

1. Appellant's assignee is The Pace Collection, Inc., a designer and manufacturer of contempo- rary furniture.

sign as claimed in application serial No. 875,918, filed February 7, 1978, for "Table." We reverse.

### Background

The design involved in this appeal is for a low table (commonly called a coffee table) of contemporary styling as shown in Fig. 1:

## FIG. 1

It is agreed that the top is transparent, and appellant alleges that the markings indicate that the legs are of a reflective material, such as stainless steel. The circular transparent top is supported by means of slots cut into the three V- or L-shaped legs.

The examiner rejected the claimed design under 35 U.S.C. § 103, citing a design patent to Rosen[2] for a desk as the basic reference, and design patents to Klein et al. (Klein)[3] for a display stand and to Hysten[4] and Mudde[5] for tables to show that the

modifications from Rosen would have been obvious.

The Rosen desk design shows a semi-circular top supported by V-shaped legs:

The Klein reference, relied upon by the examiner for its showing that "in the furniture art, thin V-shaped leg members having a slot cut therein to receive a flat top portion is well-known," discloses the following arrangement:

Two table designs were cited to show that circular glass table tops and/or round tables are also well-known:

HYSTEN

MUDDE

2.  Des. 240,185, issued June 8, 1976.

3.  Des. 183,617, issued Sept. 30, 1958.

4.  Des. 239,487, issued Apr. 13, 1976.

5.  Des. 234,068, issued Jan. 14, 1975.

From this combination of references, the examiner held it obvious to "join the Rosen legs to the circular top of Hysten by use of a slot as taught by [Klein]." Mudde was cited for the concept of three equally spaced legs. The claimed design was said to be "little more than a regrouping of expedients already in use in the same class to which the claimed article pertains."

The board, in affirming the rejection, added:

> The essential core of appellant's design, when viewed as a whole, is as stated hereinbefore, a round glass top table with three V-shaped notched legs which receive and support the top.
>
> We are of the opinion that one of ordinary skill in the art would assess the teachings of the applied references and readily observe that three equally spaced slotted V-shaped legs may be used to support a table top or shelf which is inserted in the slots of the legs. To make such a shelf or top circular and of glass instead of opaque and triangular shaped would also appear to us to have been obvious to such a person armed with the disclosures of the applied prior art patents.

## OPINION

In determining the patentability of a design, it is the overall appearance, the visual effect as a whole of the design, which must be taken into consideration. *In re Leslie*, 547 F.2d 116, 192 USPQ 427 (Cust. & Pat.App.1977); *Pelouze Scale & Manufacturing Co. v. American Cutlery Co.*, 102 F.2d 916 (CA 7 1900); *Bergstrom v. Sears, Roebuck & Co.*, 496 F.Supp. 476, 207 USPQ 481 (D.Minn.1980). If this inquiry is to be made under 35 U.S.C. § 103, it has recently been held by this court that the proper standard is whether the design would have been obvious to a designer of ordinary skill of the articles involved. *In re Nalbandian*, 661 F.2d 1214, 211 USPQ 782 (Cust. & Pat. App.1981).

Accordingly, the issue before us is whether appellant's table design from the standpoint of its appearance as a whole would have been obvious to one of ordinary skill in designing tables or other closely related contemporary furniture.

Appellant points out that there is no reference here that shows a product with the same overall appearance as appellant's table. The primary reference is a desk design, not a table. Moreover, it is urged that the PTO, in order to hold the claimed design obvious, has improperly combined various features from all the references in the light of appellant's disclosure, and not because of suggestions from the references. The board is said to have wrongly emphasized construction (means of "support") rather than appearance or design in sustaining the rejection.

Under the "ordinary designer" standard, in contrast to the "ordinary intelligent man" standard previously used in this court, *In re Laverne*, 53 CCPA 1158, 356 F.2d 1003, 148 USPQ 674 (1966), the test for obviousness may well bring more art into consideration since we must look to the knowledge of the "ordinary designer" rather than that of the "ordinary intelligent man." *Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Products, Inc.*, 597 F.2d 201, 202 USPQ 356 (CA 10 1979). Thus, here, designs of contemporary furniture other than coffee tables would reasonably fall within the scope of the knowledge of the designer of ordinary skill, such as the Rosen desk and the Hysten table. The fact that tables may have three equally-spaced legs (the only contribution of Mudde) would also clearly lie within the designer's realm of knowledge. Only the Klein display stand design raises a question as to the propriety of attributing knowledge thereof to a designer of contemporary furniture.

Assuming, however, that all the prior art designs cited by the PTO did lie within the reasonable realm of knowledge of the designer of the Rosen table, we are left with the matter of whether the various elements selected by the PTO from each of these references would have made the overall appearance of the claimed design obvious.

While a § 103 rejection of a claimed design need not be based on a sin-

gle reference, *In re Spreter*, 661 F.2d 1220, 211 USPQ 866 (Cust. & Pat.App.1981); *In re Krueger*, 41 CCPA 757, 208 F.2d 482, 100 USPQ 55 (1953), the long-standing test for the proper combination of references has been "whether they are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *In re Glavas*, 43 CCPA 797, 801, 230 F.2d 447, 450, 109 USPQ 50, 52 (1956). Moreover, as we stated in *In re Jennings*, 37 CCPA 1023, 1025, 182 F.2d 207, 208, 86 USPQ 68, 70 (1950):

> In considering patentability of a proposed design the appearance of the design must be viewed as a whole, as shown by the drawing, or drawings, and compared with something in existence—not with something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature, ... [Emphasis added.]

■ Thus there must be a reference, a something in existence, the design characteristics of which are basically the same as the claimed design in order to support a holding of obviousness. Such a reference is necessary whether the holding is based on the basic reference alone or on the basic reference in view of modifications suggested by secondary references.

Here the "something in existence" which we must use for comparison with appellant's table design is the Rosen desk, the primary reference. If the Rosen desk design is modified only to the extent that it becomes a table, it does not thereby have the design characteristics of appellant's table. The table top would be notched, and the surface surrounded by a substantial apron which is integral with the legs. Appellant's table cannot be rejected as no more than an adaptation of the desk design to table form. *See In re Lamb*, 48 CCPA 817, 286 F.2d 610, 128 USPQ 539 (1961).

Thus, the reference clearly cannot stand alone.

Nor does the Rosen desk design meet the test of a basic design reference in which features might reasonably be interchanged with or added from those in other pertinent references to achieve appellant's design. We have no doubt a designer would characterize Rosen's and appellant's designs as both being of contemporary styling, but we also believe that a designer of ordinary skill would find them significantly different in concept. Rosen does not give the same visual impression of lightness and suspension in space conveyed by appellant's table. On the contrary, Rosen embodies a concept of confinement of space, resulting in a different overall appearance and aesthetic appeal. *See Schnadig Corp. v. Gaines Manufacturing Co.*, 494 F.2d 383, 181 USPQ 417 (CA 6 1974) (new concept in furniture design negates obviousness).

Thus we need not reach the question of whether modifications of the Rosen desk are suggested by the cited art. The modifications of Rosen necessary to achieve appellant's table design would destroy fundamental characteristics of the Rosen design. The examiner's rejection of appellant's design as a mere "regrouping" of various furniture elements, without providing a basic reference which this "regrouping" might modify, cannot stand. The board's reliance upon obviousness of construction, apropos of a mechanical patent, ignores the need for an adequate starting point, a basic reference which embodies similar design concepts.

While one of ordinary skill in the design of contemporary furniture similar to appellant's table could reasonably be charged with knowledge of designs such as the Rosen desk, this knowledge alone would not have made appellant's table design obvious.

Accordingly, the decision of the board is *reversed.*[6]

REVERSED.

---

**6.** In view of our holding herein, we need not consider the evidence of copying submitted by appellant to substantiate its claim of commercial success. We only note that clear-cut imitation is indicative of the commercial appeal of the design of an article and should be given proper consideration. *Lancaster Colony Corp. v. Aldon Accessories, Ltd.*, 506 F.2d 1197, 184 USPQ 193 (CA 2 1974).