NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

————————

**DYNAMITE MARKETING, INC.,**
*Plaintiff-Appellee*

**v.**

**THE WOWLINE, INC., SHERMAN SPECIALTY LLC, SHERMAN SPECIALTY, INC,**
*Defendants-Appellants*

**WWW.SUPERIORPROMOS.COM, WWW.USIMPRINTS.COM, WWW.4ALLPROMOS.COM, UNKNOWN WEBSITES 1-10, VARIOUS JOHN DOES 1-10, UNKNOWN ENTITIES 1-10,**
*Defendants*

-------------------------------------------------

**DYNAMITE MARKETING, INC.,**
*Plaintiff*

**v.**

**4TH DIMENSON INNOVATIONS, INC., BY AND THROUGH ITS FORMER OFFICER LAERIK COOPER, LAERIK COOPER,**
*Defendants*

————————

2024-1523, 2024-1525

————————————

Appeals from the United States District Court for the Eastern District of New York in Nos. 2:19-cv-03067-GRB-LGD, 2:22-cv-01627-GRB-AYS, Magistrate Judge Gary R. Brown.

————————————

Decided:  September 12, 2025

————————————

MICHAEL CUKOR, McGeary Cukor, Bernardsville, NJ, argued for plaintiff-appellee.  Also represented by VINCENT MCGEARY.

JEFFREY LOUIS SNOW, Pryor Cashman LLP, New York, NY, argued for defendants-appellants.  Also represented by JOSEPH VINCENT MICALI.

————————————

Before PROST, CLEVENGER, and CUNNINGHAM, *Circuit Judges*.

CLEVENGER, *Circuit Judge.*

Sherman Specialty, Inc., d/b/a The WowLine, Inc., and Sherman Specialty, LLC (collectively "Sherman") appeal the final decision of the United States District Court for the Eastern District of New York ("District Court"), denying Sherman's post-verdict motions for inventorship, invalidity, and non-infringement of Dynamite Marketing, Inc.'s ("Dynamite") U.S. Patent No. D751,877 S ("D877 Patent"), denying remittitur or a new trial on the jury's award of lost profit damages to Dynamite, and awarding Dynamite attorney's fees.  For the reasons stated below, we dismiss-in-part and affirm-in-part.

## BACKGROUND

### I

In early 2013, Alexander Shlaferman ("Shlaferman"), the principal of Vante Inc. ("Vante"), conceived of a design for a rectangular credit-card sized multi-tool, later named the Wallet Ninja. After creating preliminary sketches, Shlaferman contracted the freelance services of a mechanical engineer, LaErik Cooper ("Cooper"), to create manufacturing drawings for the Wallet Ninja. Through their frequent communication, the Wallet Ninja's design iteratively evolved into its final form, submitted in the application for the D877 Patent.

Cooper acknowledged that Shlaferman was "in charge of the project" for the design process and "had the final say on every single design." J.A. 4614. Throughout the patent's prosecution, Shlaferman's patent attorney was aware of Cooper's involvement with the Wallet Ninja and communicated directly with Cooper about producing the drawings for the patent application. Cooper never asked to be included as an inventor on the application. Over two years after filing the application, on March 22, 2016[1], the D877 Patent was granted listing Shlaferman as the sole inventor. The Wallet Ninja boasted many features, including a ruler, various sized screwdrivers, a set of hex wrenches, a letter opener, can opener, and box cutter. The Wallet Ninja product, incorporating Shlaferman's design, and the D877 Patent are depicted below.

---

[1] Prior to the patent's issuance, Shlaferman assigned all his rights in the D877 Patent's application to Vante. He reassigned those rights to Dynamite Marketing, Inc., Vante's successor, on May 18, 2018.

4                DYNAMITE MARKETING, INC. v. THE WOWLINE, INC.

 

*Figure 1: The Wallet Ninja*            *Figure 2: D877 Patent (solid
                                         lines show the claimed design)*

The Wallet Ninja began selling in 2014. By mid-2017, approximately 1.9 million units had been sold. In March 2017, Robert Davila, an executive at Dynamite's competitor Sherman, emailed pictures of the Wallet Ninja to three independent entities, requesting them to source the product. In July 2017, Sherman began selling its own series of wallet-compatible multi-tool products, titled the TOL4 series.[2] Sherman received its first cease-and-desist letter on behalf of Vante in early 2018.

Shortly thereafter, Sherman redesigned its TOL4 series of products ("Redesigned TOL4"). The changes to the Redesigned TOL4 were minimal, reordering the hex nuts along the bottom edge in descending size order and mirroring the letter opener to the top left, along with other small adjustments. A comparison of the D877 Patent to the Original and Redesigned TOL4 products is presented below.

---

[2] Sherman concedes that its first series of TOL4 products infringed the D877 Patent ("Original TOL4").



*Figure 2 (repeated): D877 Patent*
*(solid lines show the claimed design)*

    

*Figure 3: Original TOL4*          *Figure 4: Redesigned TOL4*

Sherman received a second cease-and-desist letter in 2018 regarding the Redesigned TOL4. In a response letter, Sherman stated it was confident that its new design did not infringe the D877 Patent. Despite Sherman's receipt of both cease-and-desist letters, Sherman continued selling its Original TOL4 and Redesigned TOL4 products until all remaining units, estimated to be between 30–40,000 units, were purchased.

## II

Two disputes ensued. First, on May 22, 2019, Dynamite sued Sherman in the District Court, alleging willful infringement of the D877 Patent. Sherman counterclaimed seeking declaratory judgment that Sherman's TOL4 products did not infringe, and that the D877 Patent

is invalid as obvious under 35 U.S.C. § 103 and invalid as a primarily functional design.  During discovery, the matter of Cooper's assistance to Shlaferman surfaced and raised the question of whether Cooper's work amounted to a contribution to the patent sufficient to require him to be named the inventor, or at least a co-inventor, and thus owner or co-owner.  If Cooper was entitled to such status, Dynamite's suit against Sherman would require dismissal because Dynamite failed to name Cooper as a plaintiff.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467–68 (Fed. Cir. 1998) ("An action for infringement must join as plaintiffs all co-owners.").  Consequently, in early 2021, Dynamite sought Cooper's voluntary agreement to be added as a co-inventor of the D877 Patent and to assign all his patent rights to Dynamite.

When that effort failed, Dynamite filed suit on September 21, 2021, in the United States District Court for the Middle District of Florida against Cooper and his company, 4th Dimension Innovations, Inc., seeking declaratory judgment that it was the sole owner of the D877 Patent and that its principal, Shlaferman, was the sole inventor.  Pl.'s Compl., *Dynamite Marketing, Inc. v. 4th Dimension Innovations, Inc.*, Case No. 6:21-cv-1554-GAP-EJK (M.D. Fla. Sept. 21, 2021) (Dkt. No. 1).  On November 22, 2021, Cooper counterclaimed for correction of inventorship under 35 U.S.C. § 256, alleging that his participation in the development of the Wallet Ninja made him the sole owner and inventor, or at least a co-owner and co-inventor, of the D877 Patent.  Def.'s Answer and Countercls., *Dynamite Marketing, Inc. v. 4th Dimension Innovations, Inc.*, Case No. 6:21-cv-1554-GAP-EJK (M.D. Fla. Nov. 22, 2021) (Dkt. No. 13).

One week later, on November 29, Cooper signed a *nunc pro tunc* agreement assigning Sherman "all rights, title, and interest, if any, that Cooper may have in the [D]877 Patent," retroactively effective to February 26, 2014.  J.A. 5731.  As part of the assignment, Cooper agreed to

participate to any extent necessary in the New York action. J.A. 5732–33. In exchange, Sherman agreed to cover all costs and expense of the Florida action, as well as any costs incurred in Cooper's participation in the New York action. J.A. 5731–33.

## III

On Dynamite's motion, the Florida case was transferred to the District Court on February 16, 2022 and on April 22, the cases were consolidated retaining the originally scheduled jury trial. Cooper participated in the New York action independent of Sherman, represented by different counsel and submitting independent filings. Just over a year later, all parties submitted a joint request to bifurcate the trial, asking the court to address the issues of inventorship and ownership in a bench trial, and infringement, invalidity, and damages in a jury trial. After numerous substantive exchanges, the parties and the District Court failed to reach a consensus on the arrangement and scheduling of separate trials. The District Court decided that reasonable management of the court's docket required the inventorship related issues to be tried in front of the same jury as the infringement related issues. However, the District Court arranged for the trial to proceed in two distinct phases: phase one addressing inventorship and ownership; phase two addressing infringement, invalidity, and damages.

Inventorship and ownership were tried first, due to their potentially dispositive nature. Cooper appeared at the inventorship trial, maintaining as counterclaim-plaintiff that he was at least the co-inventor and co-owner of the D877 Patent. In phase one, the jury found Cooper failed to prove by clear and convincing evidence that he made a significant contribution to the D877 Patent, and thus failed to prove his status of at least co-inventor and co-owner of the patent.

8          DYNAMITE MARKETING, INC. v. THE WOWLINE, INC.

In phase two, the jury upheld the validity of the D877 Patent, found that Sherman willfully infringed the patent, and awarded Dynamite lost profit damages totaling $1,850,000.  Sherman submitted post-verdict motions on inventorship, invalidity, non-infringement, and damages, which the District Court denied.  Dynamite moved for attorney's fees and costs, which the District Court granted in the amount of $1,536,644.27, and $148,673.06 prejudgment interest, for a total award of $3,535,317.33.  Sherman appeals, but Cooper, who lost his claim as to co-inventorship and co-ownership, does not appeal.

STANDARDS OF REVIEW

Procedural rulings not unique to patent law are reviewed under the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003).  Grants and denials of motions for judgment as a matter of law are procedural and thus reviewed under regional circuit law. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1312 (Fed. Cir. 2010).  The Second Circuit reviews rulings on the grant or denial of post-verdict motions for judgment as a matter of law *de novo* and rulings on the grant or denial of new trial and remittitur for abuse of discretion. *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180, 190 (2d Cir. 2016).  *Daubert* rulings are reviewed in the Second Circuit for abuse of discretion. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

We review a jury's damages award for substantial evidence. *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002).  We review a district court's grant of attorney's fees for abuse of discretion. *In re Rembrandt Techs. LP Pat. Litig.,* 899 F.3d 1254, 1278 (Fed. Cir. 2018).

## DISCUSSION

This appeal presents several issues for review. We address (1) whether Sherman has the right to appeal Cooper's counterclaim for inventorship in Cooper's absence, and if so, whether the District Court erred in its determinations on the inventorship issue; (2) whether the District Court properly denied Sherman's post-verdict motion upholding the jury's determination that the D877 Patent was not invalid under 35 U.S.C. § 103 for obviousness or invalid for functionality; (3) whether the District Court properly denied Sherman's post-verdict motion upholding the jury's determination that Sherman willfully infringed the D877 Patent; (4) whether the District Court properly denied Sherman's post-verdict motion for remittitur or new trial on damages upholding the jury's damages award; and (5) whether the District Court properly awarded Dynamite attorney's fees. We take each issue in turn.

### Inventorship

Sherman argues that Cooper's § 256 claim for correction of inventorship was improperly given to the jury, that it was wrongly decided by the jury, and that the District Court wrongly denied Sherman's post-verdict motion on the issue. Sherman's argument derives from the observation in *Shum v. Intel Corporation*, 499 F.3d 1272, 1277 (Fed. Cir. 2007) that "an action for correction of inventorship under § 256, standing alone, is an equitable claim to which no right to a jury trial attaches." Dynamite counters that we lack jurisdiction over the correction of inventorship claim because Sherman was not a party to the correction of inventorship claim before the district court and Cooper, the losing counterclaim-plaintiff on the correction of inventorship claim, has not appealed. Despite Cooper's absence, Sherman argues that "[a]s the assignee of Cooper's ownership rights in the patent throughout the trial and this appeal," it can appeal the district court's judgment on the correction of inventorship claim. Appellant's Reply Br. 5.

The general rule is that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). The Supreme Court has recognized, however, that there are some circumstances where a nonparty "should be considered a 'party' for the purposes of appealing." *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002). In assessing whether a nonparty has the right to appeal, courts have considered several factors regarding the nonparty's role in the case below and the paths available for appellate review. *See, e.g.*, *Home Prods. Int'l, Inc. v. United States*, 846 F. App'x 890, 894 (Fed. Cir. 2021) ("Those factors are: (1) whether the nonparty participated in the proceedings below; (2) whether the nonparty has a personal stake in the outcome; (3) whether the equities favor hearing the appeal; and (4) whether the nonparty has an alternative path to appellate review of the decision."); *Kimberly ReGenesis, LLC v. Lee County*, 64 F.4th 1253, 1261–1262 (11th Cir. 2023) (collecting cases); *Sanchez v. R.G.L.*, 761 F.3d 495, 502 (5th Cir. 2014).

We conclude that Sherman's appeal as to the correction of inventorship claim should be dismissed. Regardless of Sherman's claimed ownership rights in the patent and its stake in the outcome, Sherman has presented no reason for why it failed to move for intervention or substitution in this case. A grant of one of these motions would have made Sherman a party to the litigation involving the correction of inventorship claim and given it the right to appeal. *See Marino*, 484 U.S. at 304 ("[T]he better practice is for . . . a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable."). Furthermore, despite having control over Cooper's litigation actions, J.A. 5731, Sherman did not instruct him to appeal. Cooper and Sherman also had different attorneys, portrayed themselves and acted like separate parties during the district court litigation, and only Cooper actively participated in litigating the inventorship issue. *See, e.g.*,

J.A. 520–21;    J.A. 574;    J.A. 1556–58;    J.A. 3535–46; J.A. 3622–34.  Taking these considerations together, we conclude that Sherman does not have the right to appeal the correction of inventorship claim.  Accordingly, we dismiss Sherman's appeal with respect to the correction of inventorship claim, and we do not reach the other arguments Sherman has raised regarding this claim.

## Invalidity for Obviousness

Sherman's challenge to the D877 Patent as obvious was decided by the jury and reviewed by the District Court on Sherman's post-verdict motion under the legal test set forth long ago in *In re Rosen*, 673 F.2d 388 (CCPA 1982) and *Durling v. Spectrum Furniture Co., Inc.,* 101 F.3d 100 (Fed. Cir. 1996).  The *Rosen/Durling* test was under en banc review by this court in *LKQ Corp. v. GM Global Technology Operations LLC*, 102 F.4th 1280 (Fed. Cir. 2024) at the time Sherman filed its opening appeal brief in this case. Shortly before Dynamite filed its reply brief, in *LKQ* this court rejected the *Rosen/Durling* test as unduly rigid and not aligned with the obviousness tests set forth in *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1 (1966) and *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). *LKQ*, 102 F.4th at 1293.  But under both the former *Rosen/Durling* test and the applicable *LKQ* test, an obviousness challenge at least must (a) put in evidence a prior art primary reference, and (b) show by clear and convincing record-supported reasons that an ordinary designer in the field without hindsight would have been motivated to modify the primary reference in evidence by combining specific features from specific pieces of additional prior art to create the same overall visual appearance as the claimed design. *See Rosen,* 673 F.2d at 391 (primary reference prong); *Durling*, 101 F.3d at 103 (motivation to combine prong); *LKQ,* 102 F.4th at 1298–99 (primary reference and motivation to combine prongs).

Sherman argues that the jury's verdict and the District Court's denial of its obviousness post-verdict motion cannot stand in light of the *LKQ* decision, and that we must remand the case for reconsideration of the obviousness issue under the *LKQ* test.  Dynamite argues in response that a remand is unnecessary because no reasonable juror could find obviousness by clear and convincing proof under either *Rosen/Durling* or *LKQ*, for two reasons.

First, Dynamite notes that the District Court restricted the jury's obviousness considerations to prior art "received into evidence."  J.A. 5291.  Dr. Formosa, Sherman's obviousness expert, pointed to the '230 design patent as "probably" the primary reference in the case.  *See* J.A. 5185.  Dynamite asserts that although Dr. Formosa's testimony tentatively identified a primary reference, Sherman actually failed to introduce the '230 design patent as evidence.  Appellee's Br. at 36.  Absent a prior art primary reference in evidence before the jury, Dynamite argues that an obviousness challenge under either *Rosen/Durling* or *LKQ* must fail.  In reply, Sherman does not deny that it failed to introduce the prior art its expert probably thought would suffice as a primary reference, arguing instead that "obviousness is not an issue that should require admission of the prior art."  Appellant's Reply Br. at 1 n.2.  Further, in response to this court's request at oral argument for the parties to identify in post-argument submissions all prior art submitted as evidence at trial, Sherman did not identify any point in the record showing that the '230 design patent was actually introduced into evidence.  *See generally* Appellant's Letter Br., *Dynamite Marketing, Inc. v. The WowLine, Inc.*, 2024-1523, 2024-1525 (Fed. Cir. July 21, 2025) (Dkt. No. 45).  We therefore agree with Dynamite that Sherman's failure to place in evidence a prior art primary reference defeats its obviousness challenge under either *Rosen/Durling* or *LKQ* and note the District Court's statement that "I don't think the record clearly supports the existence of a primary reference."  Trial Tr. at 891, *Dynamite*

*Marketing, Inc. v. The WowLine, Inc.*, Case No. 2:19-cv-3067 (GRB)(LGD) (E.D.N.Y. Sept. 14, 2023) (Dkt. No. 155).

Even if Sherman had put a prior art primary reference in evidence, its obviousness challenge must fail for a second reason. Dynamite correctly points out that Dr. Formosa's general hindsight-based conclusion of obviousness failed to provide clear and convincing record-supported reasons that an ordinary designer would have been motivated to combine specific design features from identified prior art references to produce the overall appearance of the D877 Patent. Appellee's Br. at 35–37. We thus reject Sherman's request for a remand to reconsider obviousness under the *LKQ* test and affirm the District Court's denial of Sherman's post-verdict motion on obviousness.

## Invalidity for Functionality

A design patent is invalid for functionality if the claimed design is dictated by the utilitarian purpose of the article. "[T]he ultimate question is not the functional or decorative aspect of each separate feature, but [instead] the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d. 1117, 1123 (Fed. Cir. 1993). "[E]lements of [a] design may indeed serve a utilitarian purpose," but ornamentality is more likely the root of the design "[w]hen there are several ways to achieve the function." *Id.*

The jury heard the testimonies of Dr. Formosa, Shlaferman, and Cooper, and observed the arrangement of the D877 Patent's features in other wallet-compatible multi-tools on the market. The jury was able to observe the impact of different arrangements on the overall design of the products and compare them to the overall design of the D877 Patent. The D877 Patent, Sherman's 2018 and 2019 product catalogs showing the Original and Redesigned TOL4 product, and photos of the Wallet Ninja were all entered into evidence. After weighing this evidence, showing

the arrangement and design of the elements of the D877 Patent as compared to other wallet-compatible multi-tools, the jury determined that the D877 Patent was not invalid for functionality. Substantial evidence supports the jury's verdict that the D877 Patent is not invalid for functionality. The District Court's denial of Sherman's post-verdict motion on functionality is beyond challenge.

### Infringement

The jury heard testimony from Dynamite's infringement expert, Dr. Rake, who identified and compared "conspicuous aspects" of the D877 Patent and the Redesigned TOL4 product and determined that the overall designs were "substantially the same." J.A. 4849–54. The jury also heard Sherman's infringement expert, Dr. Formosa, describe the Original and Redesigned TOL4 products as "pretty identical" when asked about the differences between the two. J.A. 5202. Additionally, the jury heard testimony from Sherman's executive, Robert Davila, admitting on cross-examination to the Original TOL4's infringement and that, even after being made aware that the Original TOL4 infringed, Sherman continued to sell this product until it had no remaining inventory. Mr. Davila also admitted on cross-examination to emailing pictures of the Wallet Ninja to three independent vendors, requesting them to source the product.

Non-testimonial evidence of infringement also existed in the record, including photographs of Sherman's Original and Redesigned TOL4 line of products, the D877 Patent, and photos of the Wallet Ninja. The jury was permitted to consider and assign the weight it deemed appropriate to each of these pieces of evidence in deciding the issue of infringement. In light of the substantial evidence in support of the jury's verdict, we affirm the District Court's denial of Sherman's post-verdict motion on infringement.

## Damages

Dynamite sought damages on a lost profits theory under 35 U.S.C. § 284, while Sherman argued that its profits from infringement provided a more reliable measure of Dynamite's damages. Dynamite presented its lost profits case through its expert, Ms. Kimberly Schenk, relying on and applying the test for lost profits set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Sherman's challenge under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to Ms. Schenk's credentials and methodology was rejected by the District Court during trial, and again in its denial of Sherman's post-verdict motion on damages. Sherman does not appeal the adverse *Daubert* rulings, but instead mounts on appeal various challenges to Ms. Schenk's application of the relevant *Panduit* factors to support Dynamite's lost profits case. As the District Court explained in its ruling on Sherman's post-verdict motion, Ms. Schenk provided substantial evidence on the relevant *Panduit* factors. As the District Court properly noted, Sherman had its opportunity to attack the weight of Ms. Schenk's *Panduit* testimony, and the fact that Sherman failed to convince the jury of any material flaws in Ms. Schenk's testimony does not provide any basis for post-judgment relief, either by the District Court or this court on appeal. Sherman has provided no ground to disturb the damages award in this case.

## Attorney's Fees

We review the award of attorney's fees for abuse of discretion. *Rembrandt*, 899 F.3d at 1278. Sherman claims abuse of discretion in the award of attorney's fees to Dynamite because the District Court failed explicitly to classify the case as exceptional and to describe specific misconduct warranting exceptional case status. Sherman also claims that the District Court's award constituted punishment to it, rather than compensation to Dynamite for its costs of litigation.

16          DYNAMITE MARKETING, INC. v. THE WOWLINE, INC.

We disagree with Sherman that the District Court's failure explicitly to identify the case as 'exceptional' or point to particular acts of misconduct is reversible error amounting to an abuse of discretion. "[A]n 'exceptional' case is simply one that stands out from others with respect to . . . the unreasonable manner in which the case was litigated." *Rembrandt*, 899 F.3d at 1277 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)) (alterations in original).  An overt use of the word exceptional is not required.  Instead, our court has recognized that when a party's "misconduct so severely affect[s] every stage of the litigation . . . a full award of attorney fees [is] proper." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013).

The District Court held that Sherman's "approach to this case" was "highly unreasonable," and had adversely affected the proceedings. J.A. 17.  The District Court found Sherman's conduct at times "reckless," "utterly indefensible," "unacceptable," "bord[ering] on frivolity," and "unreasonable," J.A. 16–17, commenting even at an early stage in the proceedings that "further gamesmanship . . . will result in sanctions." J.A. 55.  Sherman has shown no abuse in the District Court's exercise of its discretion to award attorney's fees to Dynamite.

As for Sherman's complaint that the District Court handed out attorney's fees as punishment instead of as compensation, we disagree.  The District Court clearly stated that it "award[ed] the amounts sought as requested . . . [to] compensate plaintiff for the costs of this protracted litigation." J.A. 18.  Nothing supports Sherman's argument that the award was punitive in nature.  Therefore, we affirm the award of attorney's fees to Dynamite.

CONCLUSION

For the reasons stated above, we dismiss Sherman's appeal with respect to the correction of inventorship claim.

We affirm the District Court's denial of Sherman's post-verdict motions on invalidity and non-infringement. We affirm the jury's award for damages and the District Court's grant of Dynamite's attorney's fees, in the total amount of $3,535,317.33.

### DISMISSED-IN-PART AND AFFIRMED-IN-PART

COSTS

No costs.